I will ask you what I have been asking everyone to stay close to the mic. I'd really appreciate it. I will try my best, Your Honor. Thank you. May it please the Court. There are a number of sentencing issues in this appeal, and the first question that I had in looking at this case is, we reached an absurd sentence. It's life and then in addition to that, 85 years, and then in addition to that, a term of supervised release. And when I see an absurd result, as in with a math problem where you get a clearly wrong answer, you look back to the process and you say, well, how did we get this absurd result? I think the most glaring error is the judge's misapprehension that a life sentence plus 85 years is a within guideline sentence. The government has conceded that that's wrong. It's a procedural error. And typically, when there is such a misapprehension about the law, this Court will remand for resentencing. The principal question in this case is, can we meet a sentence of life equivalent to a sentence of life plus any term of years? Because the government's essential argument is, who cares? He's going to serve a life sentence. Why are we trying to reverse this? There are a couple reasons why I think it's noteworthy. One is that I don't think, well, I suppose, one, I think it's an illegal sentence. Congress has said that sentences must be sufficient but not greater than necessary. This is plain and plainly greater than necessary. And when you get the main line in Section 3553A wrong, then I think that indicates less than considered judgment about the rest of those 3553A factors. The other problem, of course, that we identified in the briefing was that the government made a very strong argument that the District Court appeared to agree with, that Mr. Bower's private sexual conduct should be a basis to increase his sentence in violation of his due process right. But, Mr. Henderson, even if the government erred in arguing that the lawful videos were relevant to his character, how could it possibly be harmful here, where the conduct of conviction is so abhorrent by comparison? The reason it's relevant is because the District Court accepted the rationale of the government. The main rationale for imposing this sentence was Mr. Bower is a danger to the community. And the main argument that the government made in support of introducing that evidence was this shows he's a sexual deviant, he's a monster, he's a danger to the public because of this private sexual activity. Again, this is... Is it your argument that the lawfulness of the acts in the personal videos renders it irrelevant in considering a person's character or that the videos are not relevant because the conduct depicted does not relate to the offense of conviction? The main argument is that that information cannot be used as an argument to increase a sentence of imprisonment because it is constitutionally protected activity. So every pre-sentence report lists, for example, the defendant's race. That information is there. But if the government were to come in and say, look at page two of the pre-sentence report, it lists his race. Because of that race, you should impose a longer sentence. That would plainly be unconstitutional. So it's not that the presence of the information necessarily is the reason, but the reason this was included in the pre-sentence report is to make Mr. Bauer out to be a sexual deviant, to dehumanize him, to invoke a feeling of disgust towards him. Would that be relevant? If he were going to get out of prison, would that information be relevant in framing terms for supervised release? I think it could be. But here appears my problem. And could you address, counsel, could you also address here the statute, 18 U.S.C. 3661, providing no limitation shall be placed on the information concerning the background character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence? Right. And that's obviously true, subject to constitutional constraints. So a court can, as I said, can consider the defendant's race, but can't make that a factor at sentencing. Of course not. And here we're talking about conduct. Right. That's protected by the Constitution. So let's say... A lot of conduct is protected by the Constitution, or at least might not be criminal, but may still be relevant in evaluating character prospects for rehabilitation, et cetera. Well, I guess I read the decision in Lawrence differently. I read that decision to say, for this type of protected conduct, the government may not impose or extend a term of imprisonment. So let's change the facts a little bit. Let's say this video showed Mr. Bauer engaging in homosexual sodomy, consensual homosexual sodomy with another person. And the government says, look, he's a sexual deviant. He has his sexual appetite, knows no bounds. I think that's plainly unconstitutional. That should not be the basis of an extended term of imprisonment. And that's exactly what the government did here. I'll move on to the restitution issue, and this is mostly an issue of statutory interpretation. I did want to point the court to Mr. Bauer's pro se motion filed as document 99, where he clearly says, the government, by proceeding to appellate jurisdiction, has waived this issue. When was that filed? It was filed as, I think the title is a motion for his attorney to withdraw. But he basically says, look, I offered to pay $8,000. The government rejected that. Now they want me to pay restitution. They waived that by allowing this case to go to appeal. And the document's number 99. Your restitution argument in the brief relies very heavily on Chief Justice Roberts' dissent in the Dolan case. Could you address the majority reasoning? Well, the majority reasoning is towards 3664 D-5. And our contention is 3664 D-5 does not apply in this case. Because that section says, if the victim's losses are not ascertainable. Right. But the defense agreed at the time of sentencing to the D-5 extension, correct? I don't think that they affirmatively said, we agree that this should go forward like this. They didn't object to this. But... No objection. The government reported we're still talking, right? Right. So... That sounds an awful lot like consent to me, in their silence. I think it's a lack of objection. And there's a difference. So if the judge had... But, forgive me, but here's what I'm trying to understand. How could the government ascertain the amount of the victim's losses by the time of sentencing when the victims were wards of the state at the time and had not yet had guardians ad litem appointed to legally act on their behalf? I mean, wouldn't the government first need to consult their legal representatives to ensure that it was aware of any physical or psychological issues that the victims were going to face as a result of this crime? I suppose that's true. That's not what came out in the clinical psychologist report. The report was entirely based on information that was available to the government well in advance of sentencing. But they wouldn't have known that till the report. No, they would have because the clinical psychologist didn't interview any of the victims. There was absolute... The government rested on evidence that the victims didn't need to be interviewed and that all of these future costs could be determined on the basis of the record. So if that was not ascertainable at the time of sentencing, simply having an attorney appointed to represent the victims doesn't make those facts suddenly ascertainable two months later. They're the same facts. All you need is a professional to look at the facts to make that determination. So tell me why this perspective is wrong. Okay. Tell me why this perspective is wrong, that at the time of sentencing, everybody recognized restitution as an issue. The parties were negotiating over an appropriate amount. They had not yet reached an agreement. As Judge Rovner points out, the victims did not yet even have a legal voice that could be heard under the provisions for victim participation in criminal cases. And so there was explicit or implicit consent to put that issue off until those matters could be resolved in more detail. No further agreement was reached. No further information became available. And so the judge had to do the best with what he could when he finally had a chance to do it. And that would seem to fit well with the majority reasoning in Dolan, which tells us that the courts protect victims' rights to restitution while avoiding undue delay, but we don't want to forfeit their right to restitution. And the question is, even if there is waiver, let's say there is consent, does the district court have the authority to amend a judgment after, in the absence of 3664 D5, in the absence of that provision, does the district court have the authority to amend a final judgment after it's been appealed to this court? And the answer to that is no, it does not have that authority. So perhaps it's an ethical question for the defense attorney, right? Let's say that the district court says, I'm not going to impose a term of supervised release. I'm going to, once you get out of prison, then I'll impose a term of supervised release. Everybody agrees to this, and there's no term of supervised release on the judgment. The district court couldn't go back 10 years later and amend that judgment to now include the term of supervised release, absent specific statutory authorization to do so. And there is no. So the question in this case is, the only authorization that the district court can possibly have is pursuant to subsection D5, which says if the losses are not ascertainable, not if they're not ascertained, if they're not ascertainable at the time of sentencing, that's the only way you can amend the judgment. And that's why Chief Justice Robert's dissent is so important, because what it says is, listen, this is not disrupting our normal rules of finality. We're not saying here there's, in any restitution case, you can just go back at any time. What we're saying is when it qualifies, and the defendant in that case conceded that subsection D5 did apply to his case, when this exception qualifies, then we don't need to worry as stringently about the time limits that are contained in that section. But we don't even get to subsection D5 here. The losses were ascertainable at the time of sentencing, and what the government should have done was just simply asked to continue the sentencing hearing. The government and the district court had to ensure that they were following statutory authority as much as the defendant did. So I think even if the court finds there's waiver, there's consent, the district court still does not have the authority to impose this restitution order 220 days after sentencing. And I'll reserve the rest of my time for the witnesses. If I could, Mr. Henderson, I did want to ask you about your argument on supervised release conditions. There were no objections registered, were there, in the district court? No, this was a pre-Thompson case. I thought it was decided after Thompson. It was almost a year before. Well, it was May of 2014, rather than 15. OK. Thank you very much. Thank you. Good morning, Your Honors. Jill Koster on behalf of the United States of America. I'd like to address the- Good morning. Good morning. Will you stay close to that mic, please? I will, Your Honor. Thank you. I'd like to address the three issues brought up in the reply brief of the appellant. And first, I'd like to make a few corrections, unfortunate misstatements made by the appellant regarding the record in this case. In the reply brief at page nine, appellant misrepresents the district court's statements at sentencing. He tells this court that the district court said that Mr. Bauer had an insatiable appetite for other sexual activity in reference to the masturbatory videos that were discussed, described briefly in the PSR. In fact, what the district court said was, I've read these memorandums, referring to the sentencing memorandums, and there's as many cases on one side saying that as you get older, your sexual appetite will slow down and you're not going to be doing these crimes, and on the other side, saying they happen over and over and over again. Can I take a chance on that? Can I risk damage to society? Can I risk damage to our children for the future? That was a direct response to Bauer's argument in his sentencing memorandum that a sentence of 30 years would be sufficient because he'd be over the age of 60 by the time he was released. And according to his counsel, he provided no support for this, but recidivism rates for child molesters decrease over their lifespan. So the district court wasn't commenting on the masturbatory videos on page 32 of the sentencing transcript. He was responding to an argument made by Mr. Bauer in his sentencing memorandum regarding the length of the sentence that would be appropriate. Further, in Appellant's opening brief at page 23, he again misrepresented statements made by the district court, suggesting the district court commented on the masturbatory videos when, in fact, the district court did not comment at any point during the sentencing hearing other than when ruling on the defendant's own objection to the description of the videos in the PSR. Instead, at page 23 of the sentencing transcript, the district court is talking about the child pornography that the defendant produced and the tens of thousands of child pornography photographs found in his possession. And he says, I do know that there were repetitive acts with the child, referring to the 4- to I know that because there were numerous photographs and numerous videos in this case, and I do know that you had an insatiable appetite not only for this type of actions, but also for other. The photographs that you had of other acts were tremendous. I don't know if you were passing it on to other individuals, but I think that with your system on the Internet, that possibility may have come about. He's clearly referring there to the peer-to-peer file sharing program that the defendant had been using to receive and distribute child pornography on the Internet. If you read the entire sentencing transcripts, Your Honor, and it's only about 40 pages, you'll see that at no time did the district court, other than when ruling on the defendant's own objection, refer to the masturbatory videos. Now, Ms. Custer, you argued in the brief that both the imposition of the sentences consecutively and the impermissible supervised release conditions do not require a remand because the life sentence renders those errors meaningless. But you also, of course, recognized in your brief the possibility that a life sentence count of conviction can always be reversed or pardoned in the future. And given that potential, how can we be 100% certain, which we must be, that the error will have no impact here? Which error are you referring to, Your Honor? Which alleged error? Well, I'm referring to both here, the way the sentences were imposed and the, you know, the impermissible supervised release conditions. There's a question that this Court has to decide, I think, procedurally, whether life plus a term of years is different from a life sentence. The government's position is that it is not. If there is no functional difference between the two in terms of the sentence, then there was no procedural error by the district court in imposing the sentence. He believed he was doing it. Yes, but what the district court did here was impose consecutive sentences without explaining its reasons for doing so. And you acknowledge that under USSG Section 5G1.2C, the sentences should have run concurrently. And, of course, the district court wasn't required to follow the guidelines recommendation, but the district court was required to explain its reasoning in this case. And here, the district court stated it was imposing a within-guidelines sentence. And that alone, it seems to me, would require a remand because it reflects a misunderstanding as to the guidelines recommendations or as to the sentence that was actually imposed. If I may address that, Your Honor, it's very clear in the record that the district court knew that the guidelines called for a life sentence. There's four different places in the transcript where the district court acknowledges that. Pages 13, 32, 32 again, and page 42 of the transcript, the district court acknowledges that. If, ultimately, this court finds that there is no functional difference between a life sentence and a life plus term of year sentence, then arguably it was a within-guidelines sentence. And when the district court justified that by saying, I'm giving a sentence at the upper end of the guidelines, then he did provide exactly what the law demands, which is an explanation for why he was giving the sentence he was. If you look at sentencing transcript page 42, the district court said, this court is imposing a sentence at the upper end of the guideline because of the number of images, the sexual context with the child resulting in child pornography, the lack of remorse, the age of the children, the fair, what the adequate period of rehabilitation, respect for the law to avoid sentencing disparities, the intents of Congress, and also the reason set out by the court here earlier. And he's referring to the nine pages of transcript where the district court explained his sentence and his rationale. So that's for you to decide if a guideline sentence in this case, if life is the same thing as functionally equivalent to life plus a term of years. Either way, as Judge Posner noted in the Vance case, they're not going to send him back to jail after he's dead. Once he's dead, he's served his life term. It's the same thing. But with regard to the concerns about the conditions of supervised release, the government, as we've said in our brief, agree that some of those conditions were inappropriate. We do think that since he's never going to, in all likelihood, serve a term of supervised release, that there's no need for remand for those to be revisited. You see, all likelihood isn't enough. Understood. And on that basis, you could remand the case. We would ask for a limited remand for the district court to revisit the conditions of supervised release. Returning to the argument of appellant regarding the masturbatory videos, I just want to address there are some claims in the reply brief. Pages 9, page 9 spills over into 10, and then another claim on page 10, followed by another claim on 12, that I, on behalf of the government, repeatedly insisted that the court give the defendant a longer sentence as a result of these masturbatory videos. That's not true. If you read the transcript, and again, I urge the court to please read the transcript, the only reference by the government to the masturbatory videos is in response to the defendant's objection to their inclusion, a brief description of their inclusion in the PSR. We didn't show them to the district court. We didn't admit them into the record. They weren't included with the child pornography that the district court reviewed in camera prior to sentencing. I made no reference to them in my argument for a life sentence in my sentencing memorandum. And again, when given an opportunity to speak at sentencing, I didn't reference those videos either. And the reason is because the criminal conduct in this case vastly overshadows what's seen in those videos. As the court is aware, based on the government's recitation of the facts, the defendant videotaped himself vaginally penetrating a four-month-old, somewhere between the ages of four months and 16 months by the time he was caught. He videotaped it repeatedly. He paid the mother for access to the child. He threatened her if she cut off access to the child. He bragged about this conduct to a third party in text messages. He invited the third party to come and join him in the sexual abuse of the child, after which he was going to urinate on the baby. I mean, the conduct in this case so vastly overshadows what these masturbatory videos. But on the subject of the masturbatory videos, if the court finds that inclusion in the PSR of the videos is inappropriate, I'd just like to note that the videos were a brief description was provided in my factual basis at the time of the change of plea, which is turned over to probation, and they included it in the PSR. Defendant objected to their inclusion in the PSR, but again, what we're talking about is a three-sentence description of the defendant engaging in pretty explicit acts of sexual acts with himself on video in the privacy of his home on the same bedspread where he molested the infant child. The Sentencing Commission itself has recognized, and if you look at the 2012 report to Congress on the federal child pornography offenses, I would direct the court to pages 325 and 286. They make reference to the fact that non-criminal, sexually dangerous behavior may warrant increased punishment. They also say emerging research has focused on two major dimensions of risk, referring to the risk that sex offenders pose in society, sexual deviance and to predicting sexual recidivism by child pornography offenders. So this is information in the context of a sexual offense case. This is information that the district court can and should consider at sentencing. Counsel, if this case had gone to trial, and I assume everybody's a little bit grateful that it did not, but if the case had gone to trial and an issue of identity had been raised, those videos would have been probative, correct? Yes, Your Honor. They were also crucial to proving the interstate access element of the production counts. Is that the only way you had of proving that? Yes, essentially, because in a production of child pornography case, we have to prove that either the defendant intended to transport the images across state line or distribute them. There was no evidence of that here. You didn't have that, right. Correct. Or we can prove that they're produced using materials that were transported interstate commerce. So in this case, the videos had been deleted from the defendant's computer. Normally, and this is a circumstance unique to me, I've been doing these cases for 10 years, and this was the first case I had where we had to prove interstate commerce through this method. So the videos had been deleted. The EXIF data that would normally be stored electronically in the videos and recoverable by law enforcement was gone. Therefore, the forensic examiner had to look at the hex signature of the data that remained, and he compared that hex signature to the hex signature of the data in the masturbatory videos found on the defendant's computer. So, again, there are videos the defendant himself produced in his residence. I've got a simple question. What's a hex signature? As I understand it, Your Honor, it's ones and zeros that are unique to a device. To a device, okay. And in this case, they're unique to the camcorder that the defendant had used to produce the masturbatory videos. So he compared the hex signatures, and he concluded that it was these child pornography videos were, in fact, produced using the same camera that the defendant had used to videotape himself in the privacy of his own home engaging in sexual acts with himself on the same bedspread, as I mentioned, that he had sexually abused the infant child. Now, let me just ask you very quickly, is there any evidence that the need to guardians for the victims in this case impacted the ability to ascertain the restitution damages? Absolutely. 18 U.S.C. 3664 G1, and I apologize, this wasn't included in our brief, that statute specifically says that victims cannot be required to participate in restitution proceedings. Because of that, the government doesn't seek restitution unless a victim asks for it. Now, in this case, the victims were at the time of sentencing approximately three years old and five years old. They were wards of the state. Their mother had been a co-defendant with Mr. Bauer. She was convicted, and she is sentenced to a long jail term. So as wards of the state, then, they are in the custody of Child and Family Services in Indiana. They contacted Child and Family Services, would you like me to seek restitution? We have this house that the defendant was forced to forfeit. He was allowed to sell the house. $8,000 was produced as a result of the sale, so there was money potentially that could be paid to restitution. Would you like me to seek restitution? And the answer I got was, we can't answer that. We need to have a guardian ad litem appointed. That process requires them to file a motion in the Chins proceeding. The guardian ad litem has to be appointed then. Once there was a guardian ad litem, that person could set up a bank account and could formally ask me to pursue restitution. Once I got that request, I could reach out to Dr. West and see if she would be willing to work with us in this case to arrive at an opinion. Now, Dr. West made the determination that there's no point in speaking to a three-year-old and a five-year-old to examine them. That was not information that I had at my fingertips at the time of sentencing. Once she made that determination, Your Honor, then she issued her report. So yes, ultimately, her report was based on information available to the court. We didn't hire her. We didn't know we needed to hire her until the defendant withdrew his agreement to pay restitution and then proceeded to contest restitution. I do have more to say, but I see that I'm out of time. So thank you very much for your consideration. Thank you. Thank you so very, very much. How much time does Mr. Henderson have? Two minutes. Two minutes. Okay. Thank you. I did want to apologize to the court. On my reply brief at page 9, I cite to the sentencing transcript at page 32, that should be a citation to page 36, and that may have caused the government some confusion, so I apologize for that. I'm not sure how to respond to the government's reliance on the Sentencing Commission report, because that was not cited in the brief, or on the argument about 3664G1, because that was not cited in the brief. But what I would say is there's a lot of bureaucracy, obviously, that goes into determining restitution. And if 3664D5 said, if the losses are not ascertained because of the bureaucracy and the bureaucratic maneuvers that the government has to do, then we'd be in a different ballpark. But what the statute says, what Congress said, was if the victim's losses are not ascertainable at the time of sentencing, and what that refers to is literally if you hired somebody, they could not. So if the victims are silent, are legally mute at the time of sentencing, then their losses are unascertainable, aren't they? I don't think that's correct. If all of the information is available in the world as to what the losses are, so on a mortgage fraud scheme, we bought the house at an inflated price of $200,000, we had to sell it for $100,000. We know what the loss is, even if a victim doesn't come forward. The loss amount is ascertainable, even if nobody has ascertained it. There's a difference between hiring an expert to figure out what exactly the figure is and the facts on the ground being well established. Nothing happened after May of 2014 that would change the amount of the victim's losses. There were various bureaucratic maneuvers that had to take place, but the way that the government needs to get around that and what they do in our district is they move to continue the sentencing hearing. They make a late request for victim restitution. That's what you have to do because the law says the entire sentence must be imposed at the same time. Thank you, Your Honor. Well, thank you very much. Thank you, Mr. Henderson and Ms. Koster. And of course...